UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,

v.

KHIRY JEFFERSON,
Defendant.

Case No. 24-cr-00609-JST-1

**ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255**

Re: ECF No. 28

Before the Court Pro Se Prisoner Khiry Jefferson's motion to vacate his sentence under 28 U.S.C. § 2255. The Court denies the motion in part and orders discovery.

## I. BACKGROUND

On November 6, 2020, this Court sentenced Jefferson to 46 months in custody under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 15 at 12. Section 922(g)(1) prohibits any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year from shipping, possessing, or receiving a firearm or ammunition in or affecting interstate commerce, while Section 924(a)(2) imposes penalties. 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (2020). Jefferson had stolen $12,000 of gold and silver bars from a woman and sped away while the passenger of his car fired shots at the pursuing victim; he was subsequently arrested and a search of the apartment where he was arrested revealed a Glock-style handgun and a variety of ammunition. *Id*. at 13–14. At the time of the federal conviction, Jefferson already had a lengthy state criminal history, including first degree robbery, assault with a deadly weapon, and grand theft from a person. *Id*. at 8–11.

Jefferson completed his federal sentence on July 14, 2023, but violated the terms of his supervised release by firing a gun during a shootout in January 2024. No. 20-cr-73, ECF No. 40 at

United States District Court
Northern District of California

United States District Court
Northern District of California

1, 4. The shootout was initiated by an unknown assailant who followed Jefferson from a marijuana "pop-up" where Jefferson intended to sell 1.5 pounds of marijuana. *Id.*; No. 20-cr-73, ECF No. 64 at 2–3; ECF No. 10 at 2–3. At the time of the shootout, Jefferson possessed "eight rounds of ammunition, including three (3) rounds of 'Federal 40 S&W', three (3) rounds of 'R-P 40 S&W'; and two (2) rounds of 'WN 40 S&W,' with the casings for one of those rounds later recovered by the police." No. 20-cr-73, ECF No. 64 at 3; ECF No. 10 at 3. A surveillance camera captured the shooting and shows Jefferson firing shots at the unknown assailant. ECF No. 33 at 7.

Based on the foregoing conduct, Jefferson pleaded guilty to another violation of 18 U.S.C. § 922(g)(1) on January 10, 2025. In doing so, he attested that was fully satisfied with his counsel, ECF No. 34 at 7–8; that he understood that "in this plea agreement, [he was] giving up [his] right to appeal [his] conviction, the judgment, the sentence, any orders of the Court, with be [sic] the exception that [he] would keep the right to claim that [his] lawyer was not effective," *id*. at 14; and that he was "also giving up the right to file a collateral attack except that [he was] again reserving [his] right to claim that [his] lawyer was ineffective," *id*. at 15. He also affirmed that he "knowingly possessed a .40-caliber semiautomatic firearm loaded with eight rounds of .40-caliber ammunition," *id*. at 18, that when "[he] had that weapon, [he also was] in possession of a backpack containing about a pound and a half of marijuana" while "making efforts to sell marijuana," *id*. at 18–19, and that he knew he possessed a loaded gun while having been previously convicted of a felony, *id*. at 20. He also signed a plea agreement setting forth these facts. No. 20-cr-73, ECF No. 64 at 3; ECF No. 10 at 3.

On June 6, 2025, the Court sentenced Jefferson to a 60-month custodial sentence, consisting of a 60-month sentence on the new charge in No. 24-cr-609 and an 18-month concurrent sentence on the supervised release violation in No. 20-cr-73. ECF No. 25.

Jefferson filed the instant Section 2255 petition on April 21, 2026, arguing that his counsel provided ineffective assistance in two respects. ECF No. 28. First, he asserts that he informed his attorney about his desire to appeal his conviction to argue that 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment as applied to him, but that his attorney "failed to inform [him] on [his] appeal rights" and "fail[ed] to issue [a] notice of appeal." ECF No. 28 at 4.

United States District Court
Northern District of California

He likewise avers that his attorney provided ineffective assistance by failing to move to dismiss the indictment on the grounds that he was engaged in self defense protected by the Second Amendment, regardless of whether he is a "law-abiding" individual. *Id*. at 5.

In response to the Court's order to show cause why a writ of habeas corpus should not issue, ECF No. 29, the government filed an opposition on May 22, 2026, ECF No. 33. Jefferson did not file a reply.

## II. LEGAL STANDARD

"Under 28 U.S.C. § 2255, a federal court may vacate, set aside, or correct a federal prisoner's sentence if the sentence was imposed in violation of the Constitution or laws of the United States." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citation omitted).

## III. DISCUSSION

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must establish two factors. First, he must establish that counsel's performance was deficient, which turns on whether it "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). In analyzing trial counsel's performance, the court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Counsel must have 'wide latitude . . . in making tactical decisions,' and '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Hedlund v. Ryan*, 854 F.3d 557, 576 (9th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

"A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

United States District Court
Northern District of California

Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**A. Failure to File a Motion to Dismiss**

Jefferson argues that his counsel was ineffective for failing to file a motion to dismiss the indictment because the felon-in-possession statute was unconstitutional as applied to him. Because he cannot show a "reasonable probability" of success in such a challenge to Section 922(g)(1), he cannot prevail on a claim of ineffective assistance of counsel on that basis.

Jefferson first cites *New York State Rifle & Pistol Association, Inc. v. Bruen*, but neither that case nor its progeny supports vacating his conviction. *Bruen* held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. 1, 17 (2022). This requires the government to "identify a well-established and representative historical analogue, not a historical twin." *Id.* at 30 (emphasis removed). Applying that framework, the *Bruen* Court held that New York's requirement that applicants for carry licenses show "proper cause" by demonstrating a unique need for self-defense "violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71. In doing so, it repeatedly emphasized the fact that the petitioners were "ordinary, law-abiding, adult citizens" and therefore undisputedly "part of 'the people' whom the Second Amendment protects." *Id.* at 31–32; *see also id.* at 9, 15, 26, 30, 38.

The Supreme Court subsequently applied *Bruen* to address a provision related to the one under which Jefferson was sentenced in *United States v. Rahimi*, 602 U.S. 680 (2024). Section 922(g)(8) prohibits firearm or ammunition possession by a person subject to a restraining order issued by a court "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate," and that "includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child" or "explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that

would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8). The Court had "no trouble concluding that Section 922(g)(8) survives Rahimi's facial challenge" because "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. at 700.

Jefferson further relies on the Ninth Circuit's panel decision in *United States v. Duarte*, which was issued on May 9, 2024 and vacated on July 17, 2024. *See* 108 F.4th 786 (9th Cir. 2024) (granting rehearing en banc). Jefferson was not charged in this case until December of 2024. But even if a motion to dismiss could have been briefed and decided while the panel decision in *Duarte* was in place, it would not support a finding that the statute was unconstitutional as applied to him because Duarte invalidated Section 922(g)(1) as applied to a nonviolent felon. *See United States v. Duarte*, 101 F.4th 657, 688 (9th Cir.), *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. 2024), and *on reh'g en banc*, 137 F.4th 743 (9th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 556 (Jan. 20, 2026). The opinion expressly distinguished "crimes that suggested a proclivity for violence," acknowledging a "possible tradition of disarming a narrow segment of the populace who posed a risk of harm because their conduct was either violent or threatened future violence." *Id*. at 679 (cleaned up). And in any case, the en banc decision in *Duarte* issued a year later—a month before Jefferson was sentenced—and held that Section 922(g)(1) lay well within the nation's history and tradition of firearm regulation, even as applied to felons with purely nonviolent convictions. *United States v. Duarte*, 137 F.4th 743, 756, 761 (9th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 556 (Jan. 20, 2026).

In sentencing Jefferson in this case, the Court considered his lengthy, serious, and violent criminal history, which included grand theft, felony brandishing a weapon, felony robbery of an elderly man in front of a grocery store, another grand theft conviction, first degree burglary of an occupied dwelling, grand theft from a person, assault with a deadly weapon with the possibility of great bodily injury, and finally a prior charge under Section 922(g)(1). ECF No. 15 at 6–14. In light of this history, the Court cannot find that Jefferson does not "present a credible threat to the physical safety of others," *Rahimi*, 602 U.S. at 700, nor that he does not "pose[] a risk of harm because [his] conduct was either violent or threatened future violence, *Duarte*, 101 F.4th at 679

United States District Court
Northern District of California

(panel decision). Under *Bruen*, *Rahimi*, and both decisions in *Duarte*, there is no colorable argument that Section 922(g)(1) as applied to Jefferson violates the Second Amendment. *See also United States v. Dollison*, No. 3:18-CR-00066-SLG, 2024 WL 4145617, *7–8 (D. Alaska Sept. 11, 2024) (finding prior to the en banc *Duarte* decision that defendant failed to state a claim for Section 2255 relief from a Section 922(g)(1) conviction because "nothing in *Bruen* indicates the Supreme Court repudiated its earlier pronouncements that the Second Amendment's protections did not extend to felons."). Because Jefferson can show no prejudice from his counsel's failure to file a motion to dismiss the indictment as unconstitutional, his petition for habeas relief on that ground is denied.[1]

**B. Failure to File a Notice of Appeal**

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id*. Moreover, prejudice is presumed "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Id.* at 483–84. No further showing of prejudice is required because the accused was effectively "denied counsel at a critical stage" making "the adversary process itself . . . presumptively unreliable." *Id*. at 483 (cleaned up).

In *Garza v. Idaho*, the Supreme Court held unequivocally that this rule applies even where the defendant has waived his appeal rights in a plea agreement. 586 U.S. 232, 237, 241–42 (2019). This was so because the waiver may preserve the right to appeal at least some issues or the state may not have invoked the waiver at all. *Id*. at 243 & n.10. Rejecting the government's proposed rule that a defendant be required to show that (1) he expressed interest in a non-waived

[1] Jefferson asserts in his motion that he did not possess a firearm at the time of the January 2024 shootout leading to the instant conviction. ECF No. 28 at 15. This assertion is both irrelevant, because he does not challenge his possession of large amounts of ammunition, and contradicted by the record, including his plea admissions and video evidence of the January 2024 shooting.

issue or (2) that there were non-frivolous grounds for appeal despite the waiver, the Court explained that it had "already rejected attempts to condition the restoration of a defendant's appellate rights forfeited by ineffective counsel on proof that the defendant's appeal had merit." Id. at 245. Any such proposal, moreover, would impose an unfair and judicially unmanageable burden on postconviction defendants (who often proceed pro se) to demonstrate the merits of an appeal that never occurred. *Id*. at 245–46.

Here, Jefferson asserts that "[f]ollowing the conviction he instructed Counsel Richard Tamor to file a notice of appeal to challenge the constitutionality of the offense as it applied to him in the instant case." ECF No. 28 at 14. If true, then Jefferson received ineffective assistance under *Garza*. The government argues that "the gravamen of his complaint is that his lawyer failed to make a particular argument" and that "the choice of what specific arguments to make within that appeal belongs to appellate counsel." ECF No. 33 at 14–15 (citing *Garza*, 586 U.S. at 240). Indeed, the Supreme Court has made clear that defense counsel is not ineffective for failure to raise on appeal every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 750–51 (1983). But *Garza*'s rule is strong. Nothing in the opinion suggests that its holding does not apply merely because the defendant expressed his desire for waived or meritless arguments to be raised in his appeal. *Garza*, 586 U.S. at 233 ("That [Garza] surrendered many claims by signing appeal waivers does not change things. . . . [T]he presumption of prejudice does not bend because a particular defendant seems to have had poor prospects."). Nor does the government identify any cases suggesting that *Garza* is limited in this way. *See* ECF No. 33 at 15. If Jefferson's counsel refused to file a notice of appeal at Jefferson's request, then he rendered deficient and prejudicial assistance and Jefferson is entitled to "a new opportunity to appeal." *Garza*, 586 U.S. at 247.

Jefferson submits no evidence that he instructed his counsel to file a notice of appeal, however. His asserted desire to appeal is also in tension with his sworn admissions in his plea agreement and change of plea hearing that he understood he was giving up his right to appeal or collaterally attack his conviction, and he does not attempt to explain the inconsistency. On this basis, the government requests discovery. ECF No. 33 at 23–24.

United States District Court
Northern District of California

When a petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege to the extent necessary to enable the other side to defend against the claim. *See Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (holding that parties "impliedly waived their attorney-client privilege over communications concerning" matters they put "into issue" by bringing certain claims). Under *Garza*, the factual issue here is very narrow: Whether Jefferson instructed his counsel, after his conviction as he alleges, to file a notice of appeal, and whether his counsel refused to do so. *See Equigua v. United States*, No. CR 21-113-GW-8, 2024 WL 3467713, at *6 (C.D. Cal. May 20, 2024) (evaluating factual submissions and crediting the attorney's statement that he "did not decline to file a notice of appeal"). Discovery will therefore be permitted only as to that question. Defense counsel must produce to the government any written or recorded communications with Jefferson or notes regarding such communications pertaining to any post-plea request that Jefferson file a notice of appeal (or the lack thereof). Moreover, the government may ask defense counsel questions about oral communications he had with Jefferson pertaining to the same. Alternatively, Jefferson may withdraw this motion with prejudice in lieu of allowing his former counsel to respond, in which case the parties shall file a joint stipulation to that effect. Otherwise, within 45 days of this order, the parties shall submit supplemental briefs not to exceed three pages each, addressing whether Jefferson instructed his counsel to file a notice of appeal and his counsel declined to do so.

**CONCLUSION**

For the reasons set forth in this order, Jefferson's petition under Section 2255 is denied in part. The Court stays consideration of the remainder of his motion pending the parties' supplemental briefing or stipulation withdrawing the motion.

**IT IS SO ORDERED.**

Dated: September 11, 2026

JON S. TIGAR
United States District Judge